UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-v-<br><br>SETH FUSCELLARO<br><br>Defendant. | CR# 10-510 (JBS) |

**NOTICE OF DEFENDANT SETH FUSCELLARO'S MOTION FOR SEVERANCE**

PLEASE TAKE NOTICE that upon the accompanying memorandum of law. Defendant Seth Fuscellaro, by and through his counsel, will move this Court, before the Honorable Jerome B. Simandle, United States District Judge, at the United States Courthouse, 401 Market Street, Camden NJ 08101, at a time and date to be set by the Court to sever his trial from that of Defendants Kinard Henson, Sean Souels, Nancy Wolf-Fels, Deborah Hanson, Larry Fullenwider and Dwayne Onque, and pursuant to Rules 8(b) and 14 of the Federal Rules of Criminal Procedure, and for such other and further relief as this Court may deem proper.

**Dated: May 31, 2013**

Respectfully submitted:

    /s/ Thomas F. Burke, Esquire

Thomas F. Burke, Esquire
Two Penn Center – Suite 900
1500 JFK Blvd.
Philadelphia, PA 19102
(215) 915-8328

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing Motion For Severance and accompanying Memorandum of Law was served on May 31, 2013 via email on the following counsel of record:

AUSA Matthew Smith
Camden Federal Building and U.S. Courthouse
401 Market Street, 4th Floor
P.O. Box 2098
Camden, NJ 08101

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
UNITED STATES OF AMERICA            :
                                    :
         -v-                        :   CR# 10-510 (JBS)
                                    :
SETH FUSCELLARO                     :
                                    :
_____:

MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT SETH FUSCELLARO'S MOTION FOR SEVERANCE

**I. INTRODUCTION**

Pursuant to Rules 8(b) and 14 of the Federal Rules of Criminal Procedure, Defendant Seth Fuscellaro, by and through his undersigned counsel, submits this memorandum in support of his motion for severance.

As demonstrated herein, severance is warranted because Mr. Fuscellaro was improperly joined with Defendants Henson, Souels, Wolf-Fels, Hanson Fullenwider and Onque in the Superseding Indictment ("Indictment") on counts which do not arise from "the same act or transaction or ... the same series of acts or transactions constituting an offense or offenses" as required by Rule 8(b) of the Federal Rules of Criminal Procedure. The Indictment charges numerous distinct conspiracies to commit wire fraud and money laundering by way of sales of Jersey Shore properties to unqualified buyers, yet fails to demonstrate the overarching connection between all the Defendants and all the offenses necessary for joinder. As such, the Defendants and offenses here cannot be joined, and Mr. Fuscellaro must be tried separately.

Severance is also warranted under Rule 14 of the Federal Rules of Criminal Procedure because Mr. Fuscellaro's rights will be severely prejudiced if he is forced to stand trial with the remaining co-defendants. The cumulative impact of evidence presented against the other defendants will improperly spill over to Mr. Fuscellaro, compromising Mr. Fuscellaro's trial rights and impeding the jury's ability to consider only the evidence admissible against Mr. Fuscellaro. Moreover, the interests of judicial economy and efficiency that underlie joinder are not served by combining the trial of Mr. Fuscellaro with that of the co-defendants. There is an

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

utter lack of meaningful overlap between the several alleged conspiracies in this case. Each purported "scheme" involves entirely different communications, participants, and acts, and will thus require the presentation of entirely different evidence and witnesses. The need for multiple limiting instructions and other judicial safeguards to ensure appropriate consideration of each Defendant and each offense will also increase the time and resources required to conduct a fair joint trial. Separate trials would be a far more efficient and just solution.

Accordingly, Mr. Fuscellaro respectfully requests this Court to sever his trial from that of co-defendants.

## II. INDICTMENT

In July of 2012, a three count Indictment was filed against defendants Seth Fuscellaro and others alleging multiple counts of conspiracy to commit wire fraud and money laundering. There is also a third count of attempted murder of a witness charged. Defendant Seth Fuscellaro is only charged in Count One (1), Conspiracy to Commit Wire Fraud. *See generally* Indictment.

1. **Charge of Conspiracy to Commit Wire Fraud.** The Indictment charges Mr. Fuscellaro with one count of conspiracy to commit wire fraud. In count one of the indictment, the government alleges that over twenty-five people formed various conspiracies to purchase distressed properties at overvalued prices to unqualified buyers. The scheme, as alleged by the government, was for various individuals including Timothy Ricks, Kinard Henson, Sean Souels, to profit by finding unqualified buyers for distressed Jersey Shore properties and earn a large finder's fees once the sale was complete. Ricks, Henson, Souels and others named in the indictment held themselves out to be investors in real estate and would locate distressed properties at the Jersey Shore and other places. These defendants would negotiate prices with developers and their realtors over the true market value. These defendants and others would then find buyers for the properties, such as Larry Fullenwider and Dwayne Onque. Fullenwider and Onque could not qualify

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

for mortgages for these various properties because of insufficient funds or bad credit or both. These defendants were known as "straw buyers". Ricks, Angela Celli and others including Darryl Henry would have false financial identities created for the straw buyers including false W-2's and bank statements to make it appear to a lender that Fullenwider and Onque and other straw purchasers could qualify for a mortgage.

These false documents were then provided to co-defendant's Nancy Wolf-Fels and Deborah Hanson as mortgage brokers. Wolf-Fels and Hanson, knowing the financial statements of the straw buyers were false, still submitted them to various mortgage lenders in order to obtain mortgages for the properties.

Once the properties were sold, the investors, including Ricks, Henson and Souels, would pocket large "finder's fees" at settlement. They would split these fees with the straw purchasers. The developers unloaded properties that were becoming increasingly difficult to sell. The realtor co-defendants including Angela Celli would earn a real estate commission. Wolf-Fels and Hanson would earn a commission as the mortgage broker. The straw buyers would use their earnings from their cut of the finders fess to cover the mortgage payments, or would attempt to rent the units out to cover the costs of the mortgage and other fees, or would simply stop payment on the mortgages and allow them to go into foreclosure.

The government contends that Mr. Fuscellaro's role in this vast scheme was that he deliberately concealed the true value of a few of the properties, even though he was neither the developer nor the realtor for any of the properties involved.

Of over thirty (30) properties involved in the charged scheme, the government has charged Mr. Fuscellaro in only six (6) properties. Attached as defense Exhibit A is a break down created by the government and provided to the defense, listing the various properties involved in the scheme and the alleged defendant's involved in each sale. As it pertains to the six (6) properties that the defendant is charged, the

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

defense avers, and the government agrees, that Mr. Fuscellaro does not know, nor did he have any dealings with the other defendant's involved in the sale of the specifically listed properties including Kinard Henson, Nancy Wolf-Fels, Deborah Hanson, or Sean Souels. (See Defense Exhibit A: 401 Stockton Road, Units 302, 202, 203, Wildwood Crest New Jersey, 08260.

**2. Charges Against Timothy Ricks, Kinard Henson and Dwayne Onque. Count 2: Conspiracy to Commit Money Laundering.**

The Indictment charges Ricks, Henson, and Onque and others with money laundering. The scheme, as charged by the government alleges that each of these defendants would receive large finder's fees paid out of the settlement for bringing straw buyers in to purchase properties from distressed developer. These defendants would then channel the fees through a variety of shell companies and corporations for the purpose of hiding the true origin their ill-gotten gains. The amount of money and the sheer amount of transactions by these defendant's is staggering totaling over one million dollars ($1,000,000.00). Mr. Fuscellaro is not charged in this count.

**3. Attempted Murder of a Witness – Kinard Henson.**

In July of 2008, Mortgage Now was served with a grand jury subpoena in connection with the investigation that is the subject of this indictment. The grand jury subpoena sought documents regarding the settlement and purchase of a property the government has only identified as L.B. L.B. was a straw purchaser of a property in the Wildwoods recruited by Kinard Henson. Nancy Wolf-Fels was an employee of Mortgage Now, and notified Kinard Henson of the subpoena. Kinard Henson then hired a person identified as R.S. to kill L.B. in order to keep him silent. R.S. did shoot L.B. several times with Kinard Henson's firearm and on Kinard Henson's instructions. Mr. Fuscellaro was not charged in Count 3.

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

### III. ARGUMENT

#### A. The Indictment's Joinder Of Defendants And Offenses Is Improper Pursuant To Rule 8(b) And Mr. Fuscellaro Should Be Granted A Separate Trial.

Federal Rule of Criminal Procedure 8(b) governs the joinder of defendants and offenses in a multi-defendant indictment. *United States v. Attanasio,* 870 F.2d 809, 814 (2d Cir. 1989); *United States v. Turoff,* 853 F.2d 1037, 1043 (2d Cir. 1988). Where, as here, the Indictment charges multiple defendants and multiple offenses, joinder is tested solely under Rule 8(b) rather than Rule 8(a). *Attanasio, supra; Turoff, supra; United States v. Papadakis,* 510 F.2d 287, 300 (2d Cir. 1975); *see also,* 1A CHARLES ALAN WRIGHT & ANDREW LE1POLD, FEDERAL PRACTICE AND PROCEDURE, CRIMINAL § 144 (4th ed. 2008) ("[I]n cases involving multiple defendants, the propriety of joinder is tested by Rule 8(b) alone and Rule 8(a) has no application."). Rule 8(b) is explicit that joinder of defendants is permitted only when they are "alleged to have participated in the same act or transactions or in the same series of acts or transactions constituting an offense or offenses." Fed. R. Crim. P. 8(b). Accordingly, "multiple defendants cannot be tried together on two or more 'similar' but unrelated acts or transactions"; a multi-defendant, multi-offense trial is permissible "only if the charged acts are part of a 'series of acts or transactions constituting an offense or offenses.'" *Turoff',* 853 F.2d at 1043 (citation omitted).

To establish that different charged acts are part of the same series, as Rule 8(b) requires, the government must show that all the acts in which Mr. Fuscellaro, Kinard Henson, Sean Souels, Nancy Wolf-Fels, Deborah Hanson, Larry Fullenwider and Dwayne Onque are alleged to have participated "(1) arise out of a common plan or scheme, or (2) are unified by some substantial identity of facts or participants." *United States v. Lech,* 161 F.R.D. 255, 256 (S.D.N.Y. 1995) (citing *United States v. Cervone,* 907 F.2d 332, 340-341 (2d Cir. 1990)); *see also Attanasio,* 870 F.2d at 815 (allegations "must be unified by some substantial identity of

[Create PDF](http://www.novapdf.com) files without this message by purchasing novaPDF printer (http://www.novapdf.com)

facts or participants or arise out of a common plan or scheme") (internal quotations omitted). Importantly, the law is settled that neither the similarity of crimes nor commonality of the parties involved suffices to permit joinder. *United States* v. *Sattar,* 314 F.Supp.2d 279, 316 (S.D.N.Y. 2004) ("[S]eparate transactions do not constitute a 'series' within the meaning of Rule 8(b) 'merely because they are of a similar character or involve one or more common participants.'") (quoting *Lech,* 161 F.R.D. at 256); *see also* WRIGHT & LEIPOLD, *supra,* § 144 ("[W]here one defendant is charged with a certain offense and a second defendant is alleged to have committed a similar offense, but there is no allegation that the two offenses arose from the acts or transactions in which both defendants participated, joinder is not permitted.") Rather, to sustain joinder, there must be a clear and logical connection between all of the defendants and all of the offenses, such as "an overall conspiracy linking the various substantive crimes charged in an indictment." *Lech,* 161 F.R.D. at 256 (citing *United States* v. *Henry,* 861 F. Supp. 1190,1200 (S.D.N.Y. 1994)).

Absent a "common plan or scheme" or "substantial identity of facts or participants,"

*Lech,* 161 F.R.D. at 256, between defendants and offenses, joinder of distinct conspiracies in a single trial is improper.  This prohibition "is no mere procedural nicety, but is instead an important safeguard against the temptations of mass trials." WRIGHT & LEIPOLD, *supra,* § 144. Misjoinder of defendants inherently creates a serious likelihood of prejudice against the accused, as the Supreme Court recognized in *McElroy* v. *United States,* 164 U.S. 76, 81 (1896):

> [Joinder cannot be sustained where the parties are not the same, and where the offenses are in nowise parts of the same transaction, and must depend upon evidence of a different state of facts as to each or some of them. It cannot be said in such case that all the defendants may not have been embarrassed and prejudiced in their defense, or that the attention of the jury may not have been distracted to their injury in passing upon distinct and independent transactions.

(cited in *U.S. v. Charnay,* 211 F. Supp. 904,906 (S.D.N.Y. 1962)). Indeed, the risk of prejudice is so great that the mere existence of misjoinder itself demands severance, with no further showing of harm required. *See United States* v. *Gamaldi,* 384 F.Supp. 529, 530

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

(S.D.N.Y. 1974) ("Where multiple defendants are charged with offenses in no way connected, and are tried together, they are prejudiced by that very fact, and the trial judge has no discretion to deny [a motion for severance].") (quoting *Ingram v. United States,* 272 F.2d 567, 570-571 (4th Cir. 1959)); *United States,* v. *Ricciardi,* 40 F.R.D. 133, 134 (S.D.N.Y. 1965) ("[W]here joinder is improper under Rule 8(b), no prejudice need be shown because there is no discretion to be exercised by the Court.") (citation omitted).

In *United States* v. *Kouzmine,* 921 F. Supp. 1131 (S.D.N.Y. 1996), the indictment charged several defendants on multiple counts of immigration fraud conspiracy and substantive offenses. Six of the counts were related to one conspiracy; the remaining three counts charged a separate and distinct scheme. Defendants who had been involved in only the first conspiracy moved for severance on the basis of misjoinder. In opposition, the government argued that Rule 8(b) was satisfied because both conspiracies had similar objects, implicated two common co-conspirators, involved the same undercover agent and confidential informant, and the second conspiracy arose from a falling out among participants of the first. In rejecting these contentions and granting severance, the Court noted that there was "no colorable argument in this case... that both conspiracies alleged here were part of a single overarching scheme." 921 F. Supp. at 1133. The charges lacked an "identity of participants" as "there was no evidence that the defendants joined in the indictment were aware of or joined in all of the schemes alleged." *Id.* As such, the Court concluded, "it is hard to see why the moving defendant... [should be] burdened with the risks inherent in joinder of those alleged conspiracies simply because he had the misfortune of being charged with another defendant who was subject also to other accusations." *Id.*

Similarly, in *United States* v. *Gentile,* 60 F.R.D. 686, 687-688 (E.D.N.Y. 1973), the Court ordered severance where the indictment failed to demonstrate the existence of a common scheme or plan among multiple defendants. There, two defendants were charged with offering bribes with respect to their own separate tax matters, and a third defendant was charged with offering bribes in the cases of the first two defendants as well as in his own case. As the

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

indictment failed to connect the first two defendants with the third defendant's activities, and also failed to establish a connection between the three defendants' tax issues, *id.* at 687-688, the Court ordered separate trials because "there are three separate and distinct offenses involved in this case." *Id.* at 689.

Other cases have resulted in similar conclusions. *See, e.g., United States* v. *Shellef,* 507 F.3d 82, at 103 (2d Cir. 2007) (vacating convictions due to prejudicial misjoinder where, despite common participation of both defendants in some of the alleged offenses, "the connection between [the counts charged] is too tenuous to justify joinder under Rule 8."); *United States* v. *Camacho,* 939 F. Supp. 203 (S.D.N.Y. 1996) (joinder not proper where the government had not alleged that the two conspiracies charged in the indictment shared a common plan); *Lech,* 161 F.R.D. at 257 (joinder of three separate albeit similar conspiracy charges was improper, notwithstanding one common participant and similar objects, because there was no suggestion that the moving defendant had any "involvement in the other schemes charged, and at most he had cursory knowledge of the other criminal activities"); *United States v. Giraldo,* 859 F.Supp. 52, 54 (E.D.N. Y. 1994) (joinder of conspiracy charges improper because there was "no suggestion that [the defendants] knew of or were involved in any overall scheme" and no substantial identity of participants) (internal quotations omitted); *United States v. Menashe,* 741 F. Supp. 1134, 1138 (S.D.N.Y. 1990) (granting severance when government failed to allege that two defendants "were aware of or joined in" a third defendant's illegal plan to sell anti-aircraft missiles).

As in *Kouzmine, Gentile,* and the other cases cited above, the Defendants here must be severed because the Indictment charges distinct offenses predicated on distinct conspiracies involving distinct individuals, events, and activities, all without establishing the connection necessary for joinder. Far from evidencing that all the counts "arise out of a common plan or scheme," the Indictment confesses the severability of the counts by expressly framing and labeling each of the alleged conspiracies (and related substantive offenses) as a distinct and separate "scheme" (e.g., "Erin Shores"; "The Dunes"; "The Bahama Breezes"; "Surf Avenue

Condominiums"; "Naples Florida Properties" and "Other New Jersey Properties"). The mere fact that Mr. Fuscellaro "allegedly acted in concert with Angela Celli with respect to [some] of the properties is not sufficient to show a common plan" among all the charges. *United States* v. *Carrozza,* 728 F. Supp. 266,271 (S.D.N.Y. 1990). The Indictment simply fails to demonstrate that all the separate schemes were related. Rather than establish a "common plan or scheme" linking all the counts together, the Indictment itself professes its absence.

Neither is there a "substantial identity of facts or participants" among all the offenses charged. "The Dunes Condominiums" has several different defendants listed as participants in the scheme, and yet, these same participants are not uniformly charged on all Dunes Units. Similarly, the other various development projects charged (i.e., Bahama Breezes, Surf Avenue, etc.) has some of the same participants as charged in the Dunes, but not all the same participants. Some charged projects have different defendant's altogether such as Erin Shores, Surf Avenue, Naples Florida and Other New Jersey Properties. There is only a small overlap in facts or participants amongst the various projects. Mr. Fuscellaro makes only half an appearance in the Dunes projects and no appearance at all in the other projects charged in the indictment. There is virtually no overlap even among the companies that were the alleged subjects of the separate Count 2 Conspiracy to Commit Money Laundering Charge. And, Mr. Fuscellaro is not charged in that count. There is no indication that Mr. Fuscellaro had any knowledge of the other developments charged in the indictment let alone participated in them. *Lech,* 161 F.R.D. at 257. There is no proof that Mr. Fuscellaro knows any of the other co-defendants other than Angeli Celli, who has already pled guilty. Even the fact that some of the different alleged conspiracies occurred during similar time periods is an "ephemeral" correlation, "not sufficient... to establish the linkage necessary to justify joinder." *Camacho,* 939 F. Supp. at 209. The Indictment simply fails to allege a "single overarching scheme" connecting the Joint Counts with the all the other offenses charged against the individual Defendants. *Kouzmine,* 921 F. Supp. at 1133.

Notwithstanding the general preference for joint trials when defendants are properly

indicted together, *Zafiro v. United States,* 506 U.S. 534, 537 (1993), it is not at all unusual for alleged co-conspirators to be severed and tried separately on a conspiracy charge when other, unrelated charges against them have been misjoined in violation of Rule 8(b). *See, e.g., Lech,* 161 F.R.D. at 258 (severing the trial and counts of one defendant from that of jointly indicted coconspirators); *Menashe,* 741 F. Supp. at 1138-39 (same). That is exactly what has happened in this case, where the Defendants are jointly charged on a single count of conspiracy, but each is alleged to have participated in differing numbers of real estate transactions with differing number of defendants. Most of these real estate transactions have nothing to do with each other in terms of the same participants, but appeared to have been joined because it is the same type of scheme, involving many different defendants, both charged and uncharged. Furthermore, few of the charged defendants know each other, and none know of Mr. Fuscellaro, with the exception of Angela Celli.

In short, the six separate conspiracies (for the six separate developments) charged in the Indictment, and their corresponding substantive counts, are precisely those for which the Federal Rules envision severance. They do not arise out of "the same acts or transactions or in the same series of acts or transactions" as required for joinder under Rule 8(b). They are, as a plain reading of the Indictment documents, unrelated conspiracies (and Counts Two and Three) and utterly lacking in any unifying nexus. The only thing uniting these counts is the common prejudicial effect and confusion that roping together fundamentally unrelated defendants and charges will cause. That is not permissible. The Rules of Criminal Procedure "do not permit cumulation of prejudice by charging several defendants with similar but unrelated offenses," *Turqff,* 853 F.2d at 1043 (quoting *Cupo* v. *United States,* 359 F.2d 990, 993 (D.C. Cir. 1966), *cert, denied,* 385 U.S. 1013 (1967)). Accordingly, all the charges against Mr. Fuscellaro should be severed and Mr. Fuscellaro should be tried separately from the other defendants.

      **B. In The Alternative, Severance Is Warranted Pursuant To Rule 14 Because A Joint Trial Will Be Unfairly Prejudicial To Mr. Fuscellaro And Fail To Serve The Interest Of Judicial Efficiency And Economy.**

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

Even where multiple defendants are deemed properly joined under Rule 8(b), the Court has "great latitude to sever defendants," pursuant to Rule 14 of the Federal Rules of Criminal Procedure in the interests of justice. *United States v. Brown,* 16 F.3d 423,432 (D.C. Cir. 1994); *see also United States v. De Villio,* 983 F.2d 1185, 1192 (2d Cir. 1993) ('The trial court has discretion to grant a defendant's request for severance under Rule 14 if it appears that the joinder with other defendants will result in undue prejudice."). Rule 14 provides that "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14. Though joint trials may help "promote economy and efficiency," courts must take great care that "these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." *Bruton* v. *United States,* 391 U.S. 123, 131, n.6 (1968) (citations omitted).

It has long been recognized that "[a] single trial with more than one defendant creates several risks for the accused." WRIGHT & LEIPOLD, *supra,* § 223. Thus, where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence," a court should grant severance. *Zafiro* v. *United States,* 506 U.S. 534, 539 (1993).

A central concern for courts is "spillover evidence," where a defendant's rights are compromised when "evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against the defendant." *Zafiro,* 506 U.S. at 539. That is, a jury may erroneously consider evidence of a codefendant's wrongdoing in concluding that a defendant is likewise guilty. *Id.* There is also a danger that evidence which is "probative of a defendant's guilt but technically admissible only against a codefendant," such as an admission by the codefendant, will result in substantial prejudice towards the defendant. Particularly in a joint conspiracy trial, "[there generally will be evidence of wrongdoing by somebody. It is difficult for the individual to make his own case

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

stand on its own merits in the minds of jurors who are ready to believe that birds of a feather are flocked together."] *Krulewitch v. United States,* 336 U.S. 440, 454 (1949) (Jackson, J., concurring).

Mr. Fuscellaro would be severely prejudiced by a joint trial with the co-defendants. Mr. Fuscellaro is not charged or even implicated in five of the six real estate developments, and there is no uniformity amongst the charged defendant's and the various properties. Furthermore, Mr. Fuscellaro is no even charged in Counts Two and Three.  The prejudicial effect of sitting at trial with co-defendant's who were pocketing obscene amounts of money and attempting to kill a straw purchaser will not be cured by any jury instruction.  However, should he be forced to stand trial with the others, the jury adjudicating Mr. Fuscellaro's case will be compelled to sit through long presentations of evidence on the unrelated real estate developments, money laundering and attempted murder of a witness. *United States* v. *Branker,* 395 F.2d 881, 888 (2d Cir. 1968), *cert, denied,* 393 U.S. 1029 (1969) ("The jury is subjected to weeks of trial dealing with dozens of incidents of criminal misconduct which do not involve [particular defendants] in any way. As trial days go by, 'the mounting proof of the guilt of one is likely to affect the other.'") (quoting *Schaffer v. United States,* 362 U.S. 511, 523 (1960) (Douglas, J., dissenting)). Given that there will be little overlap of participants in the various real estate developments, and no overlap involving Mr. Fuscellaro with regard to Count Two and Three, there is a significant risk that whatever guilt the jury might associate with Kinard Henson, Sean Souels, Nancy Wolf-Fels, Deborah Hanson, Larry Fullenwider and Dwayne Onque will improperly spill over into the jury's consideration of the evidence (such as it is) against Mr. Fuscellaro.

In addition to spillover evidence, there is a substantial risk that the sheer volume of evidence on the unconnected individual real estate transactions will cloud and confuse the jury's judgment about whether there was the single independent joint conspiracy that the Indictment alleges. *See Branker,* 395 F.2d at 887-88. The charges in this case center around accusations of mortgage of wire fraud.  The jury will be exposed to, and required to

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

understand, a slew of unfamiliar, highly technical matters regarding these transactions, including the job and duties of realtors, how real estate values are arrived at, what effects the value of real estate, the job of mortgage brokers, mortgage investors, the difference between the two, the role of settlement agents and the requirement of HUD forms. Thousands of documents and records have already been produced in pre-trial discovery, which is still ongoing; the government will present literally hundreds of documents in its case at trial. The charges against Mr. Fuscellaro involve three different properties with a total of six loans, each of which will require different witnesses - such as the government's different cooperating witnesses, none of which will verify or corroborate the government's allegation that the defendant concealed the true value of the real estate.  Bombarded with complex evidence on over thirty (30) different properties relating to several different conspiracies involving several different sets of alleged co-conspirators, witnesses, and events, it is unrealistic to expect the jury to effectively "compartmentalize" the evidence presented to it and distinguish among the Defendants and charges as the Constitution and Federal Rules require. As Judge Learned Hand warned, "[t]here is indeed always a danger when several crimes are tried together, that the jury may use the evidence cumulatively; that is, that, although so much as would be admissible upon any one of the charges might not have persuaded them of the accused's guilt, the sum of it will convince them as to all." *United States v. Lotsch,* 102 F.2d 35, 36 (2d Cir. 1939). In such cases, severance is necessary to ensure each defendant is afforded a fair and untainted trial.

      Finally, the usual interests underlying the preference for joint trials - efficiency and economy of judicial resources - are absent here.  The Indictment alleges no fewer than thirteen distinct criminal "schemes," none of which bear any meaningful relation or connection to the others. Each scheme alleges entirely different communications, participants, realtors, brokers, recruiters and straw purchasers, and actions taken in connection with that particular real estate transaction. Each will thus require the presentation of entirely different evidence and witnesses about entirely distinct events. There is little overlap between the

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

participants in the six (6) Dunes Condominiums in which Mr. Fuscellaro is charged and other developments.  There is no overlap at all between Mr. Fuscellaro and those defendants charged in counts Two and Three. Consequently, trying Mr. Fuscellaro with the other defendants together on all the counts would confound judicial efficiency and would needlessly consume judicial resources, as additional resources and efforts will have to be poured into ensuring that the evidentiary and proof lines between all of these unrelated events are properly monitored in what already promises to be a complex, lengthy and document-intensive trial.   For example, the number of limiting instructions alone that would be required to try to ensure appropriate consideration of the charges will likely lengthen the trial and cause substantially more, not less, confusion among jurors.   Combined with the prejudice a joint trial threatens, those considerations militate strongly in favor of severance. Separate, tightly-focused trials for each individual Defendant is a far more efficient, judicious, manageable, and fair solution for all concerned.

## IV.  CONCLUSION

For all the foregoing reasons, Mr. Fuscellaro respectfully requests that the Court grant his motion for severance of Defendants and order separate trials for each Defendant.

Respectfully submitted,

        /s/ Thomas F. Burke, Esquire

Borum, Burke, DiDonato & Voci, LLC
By: Thomas F. Burke, Esquire
Two Penn Center – Suite 900
1500 JFK Blvd.
Philadelphia, PA 19102
tburke@borumburke.com

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)

CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing Motion For Severance and accompanying Memorandum of Law was served on May 31, 2013 via email on the following counsel of record:

      AUSA Matthew Smith
Camden Federal Building and
U.S. Courthouse
401 Market Street – 4th Floor
P.O. Box 2098
Camden, NJ 08101


      /s/ Thomas F. Burke, Esquire

Borum, Burke, DiDonato & Voci, LLC
By: Thomas F. Burke, Esquire
Two Penn Center – Suite 900
1500 JFK Blvd.
Philadelphia, PA 19102
tburke@borumburke.com

Create PDF files without this message by purchasing novaPDF printer (http://www.novapdf.com)